IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

Mary Ellen Clark                                                                               Plaintiff

v.                                     No. 3:15-CV–211-DPM-JTK

Carolyn W. Colvin, Acting Commissioner,
Social Security Administration                                                           Defendant

### Recommended Disposition

### Instructions

The following recommended disposition was prepared for U.S. District Judge D.P. Marshall.  A party to this dispute may file written objections to this recommendation.  An objection must be specific and state the factual and/or legal basis for the objection.  An objection to a factual finding must identify the finding and the evidence supporting the objection.  Objections must be filed with the clerk of the court no later than 14 days from the date of this recommendation.[1]  The objecting party must serve the opposing party with a copy of an objection.  Failing to object within 14 days waives the right to appeal questions of fact.[2]  If no objections are filed, Judge Marshall may adopt the recommended disposition without independently reviewing all of the record evidence.

---

[1] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[2] *Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (failure to file objections waives right to de novo review and to appeal magistrate judge's findings of fact).

## Reasoning for Recommended Disposition

Mary Ellen Clark seeks judicial review of the denial of her application for disability insurance benefits (DIB).[3] Clark last worked as an insurance agent.[4] She quit her job in August 2008. Her reasons for leaving her job vary.[5] Initially, Clark claimed she was disabled when she quit her job, but she later amended her claim to allege disability beginning November 1, 2011.[6] Clark based disability on degenerative arthritis, spinal stenosis, chronic pain, chronic migraine and tension headaches, a remote hand injury, and a 17% disability in the dominant hand.[7]

**The relevant time period.** To receive DIB, the claimant must show she was disabled before insured status expires.[8] Clark's insured status expired on December 31, 2011. Thus, this case considers a narrow time period: November 1, 2011 — the

---

[3]SSA record at p.114 (applying on July 31, 2012 and alleging disability beginning on Aug. 1, 2008)

[4]*Id*. at pp. 149 & 162.

[5]*Compare id*. at p. 29 (testifying that she stopped working In Aug. 2008 because she had problems with her neck while working at the computer and talking on the phone), *with id*. at p. 161 (reporting that she stopped working because of her condition and to meet the income requirements for medical insurance through her husband's employment). *But see id*. at p. 257 (reporting that she started having neck problems in Jan. 2010, after tripping and falling into a door).

[6]*Id*. at p 22.

[7]*Id*. at p. 160.

[8] *See* 42 U.S.C. §§ 416(i), 423(c); *Pyland v. Apfel*, 149 F.3d 873, 877 (8th Cir. 1998).

amended onset date — to December 31, 2011 — the day insured status expired. The decision states an erroneous time period (August 1, 2008 — the original onset date — to December 31, 2011 — the day insured status expired),[9] but the mistake has no bearing on the result. The decision states the amended onset date.[10]

**The Commissioner's decision**. The ALJ identified severe impairments: arthritis, chronic pain, spinal stenosis, migraines, and status post injury to dominant hand with three fingers broken in a press.[11] The ALJ determined Clark can do some light work, to include her past work as an insurance agent.[12] Because a person who can do her past work is not disabled under social security law,[13] the ALJ determined Clark isn't disabled and denied the application.[14]

After the Appeals Council denied review,[15] the ALJ's decision became the

---

[9]*Id*. at p. 17.

[10]*Id*. at p. 11 ("The claimant later amended her alleged onset date to November 1, 2011.").

[11]*Id*. at p. 13.

[12]*Id*. at pp. 14 & 17 (requiring occasional overhead reaching).

[13]20 C.F.R. § 404.1520(a)(4) ("If you can still do your past relevant work, we will find that you are not disabled.").

[14]SSA record at p. 17.

[15]*Id*. at p. 1.

Commissioner's final decision for the purpose of judicial review.[16] Clark filed this case to challenge the decision.[17] When reviewing a decision denying an application for DIB, the court must determine whether substantial evidence supports the decision and whether the ALJ made a legal error.[18] This recommendation explains why substantial evidence supports the decision and why the ALJ made no legal error.

**Clark's allegations**. Clark maintains the ALJ erred on the law in considering the impairments listed in the Commissioner's regulations. She contends she qualifies for DIB under listing 1.02 (major dysfunction of a joint) and listing 1.04 (disorders of the spine ).[19]

**Applicable legal principles**. If the claimant's impairment meets or medically equals an impairment listed in the Commissioner's regulations (a listing), the claimant

---

[16] *See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating that "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the Commissioner's appeal procedure permits claimants to appeal only final decisions).

[17] Docket entry # 1.

[18] *See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

[19] Docket entry # 15.

qualifies for DIB.[20] "For a claimant to show that [her] impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify."[21]

**No basis exists for disability under listing 1.02**. Meeting listing 1.02 requires, among other things, (1) an inability to ambulate effectively, or (2) an inability to perform fine and gross movements effectively.[22]

---

[20]20 C.F.R. §§ 404.1520(a)(4)(iii) ("At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.").

[21]*Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

[22]The requirements for meeting listing 1.02 follow:

> 1.02  Major dysfunction of a joint(s) …: Characterized by gross anatomical deformity … and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b; or
> B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively ….

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.02.

Clark cannot show an inability to ambulate effectively[23] because she can walk a sufficient distance to carry out activities of daily living. She can travel without companion assistance. She does not need a walker, crutch, or cane. She can walk without assistance to clean her home, cook meals, and launder clothing.[24] She may find it difficult to mop, clean the bathtub, and put wood in the furnace,[25] but she can do it. By her own report, she can walk at least half a mile before stopping.[26]

Clark cannot show an inability to perform fine and gross movements effectively

---

[23]20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00B2b ("Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning …to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. …To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. …").

[24]SSA record at pp. 30, 141 & 143.

[25]*Id*. at p. 181.

[26]*Id*. at p. 146.

because she has no extreme loss of function of both arms.[27] After Clark fell out of a truck, diagnostic imaging of the right shoulder showed bursitis and rotator cuff tendinitis,[28] but Clark still had a pretty good range of motion with minimal pain.[29] She may experience episodic right shoulder pain, but pain does not very seriously interfere with the ability to independently initiate, sustain, or complete activities.  She can reach, push, pull, grasp, and finger to carry out activities of daily living.  She can prepare meal and feed herself, care for her personal hygiene, and otherwise use her arms, hands, and fingers.  When she applied for DIB, she reported no problems with reaching.[30] To the extent she relies on a remote right hand injury and surgery, the injury did not prevent working as an insurance agent.  The ALJ did not err in considering listing 1.02.

**No basis exists for disability under listing 1.04**.  Meeting listing 1.04 requires,

---

[27]20 C.F.R. pt. 404, subpt. P, app. 1, § 1.02. B2c ("Inability to perform fine and gross movements effectively means an extreme loss of function of both upper extremities; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. To use their upper extremities effectively, individuals must be capable of sustaining such functions as reaching, pushing, pulling, grasping, and fingering to be able to carry out activities of daily living. Therefore, examples of inability to perform fine and gross movements effectively include, but are not limited to, the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and handle papers or files, and the inability to place files in a file cabinet at or above waist level.").

[28]SSA record at pp. 228 & 237.

[29]*Id*. at p. 235 & 237.

[30]*Id*. at p. 146.

among other things, compromise of a nerve root (including the cauda equina) or the spinal cord.[31] Diagnostic imaging of the cervical spine showed no compromise of a nerve root or spinal cord.[32] To the extent Clark relies on 2010 neck surgery, surgery resolved pe-surgery symptoms.[33] Her surgeon recommended no additional surgery after the reported fall. The ALJ did not err in considering listing 1.04.

---

[31]The requirements for meeting listing 1.04 follow:

1.04 Disorders of the spine  (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss … accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); OR
B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or
C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively ….

20 C.F.R., pt. 404, subpt. P, app. 1, ¶ 1.04.

[32]SSA record at p. 243.

[33]Id. at p. 236.

**Conclusion and Recommended Disposition**

The ALJ made no legal error in considering listed impairments. No evidence suggests Clark meets listing 1.02 or 1.04. For these reasons, the undersigned magistrate judge recommends DENYING Clark's request for relief (docket entry # 2) and AFFIRMING the Commissioner's decision.

Dated this 8th day of March, 2016.

_____
United States Magistrate Judge